**Opinion issued January 26, 2023**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-21-00431-CV**

————————————

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellant**

**V.**

**JORGE GONZALEZ ROCHA AND KIRK GIPSON, Appellees**

---

**On Appeal from the 129th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-19803**

---

## O P I N I O N

Appellant, the Texas Department of Criminal Justice (TDCJ), appeals the trial court's denial of its partial plea to the jurisdiction seeking to dismiss Appellees Jorge Gonzalez Rocha's and Kirk Gipson's request for a "finding" of a violation of the Texas Constitution under Section 501.019 of the Texas Government Code. Because

we conclude that Section 501.019 does not contain a clear and unambiguous waiver of sovereign immunity, we hold that the trial court erred in denying TDCJ's plea to the jurisdiction.

We reverse and render.

## Background

Appellees sued the TDCJ pursuant to the Texas Tort Claims Act (the Act or TTCA). Appellees alleged that they were passengers in a van driven by TDCJ's employee when the employee attempted to pass another vehicle on the roadway, "drove the van to the left of the center of the roadway into the lane designated for oncoming traffic and collided with another vehicle" driven by the codefendant, Lawrence Dmello. Appellees alleged that TDCJ's employee violated various provisions of the Texas Transportation Code and that TDCJ was vicariously liable for its employee's actions pursuant to the TTCA, Section 101.021 of the Texas Civil Practice & Remedies Code. Appellees sought damages for their injuries.

Appellees also alleged that TDCJ violated Article 1, Sections 13 and 19 of Texas Constitution by:

- "failing to seatbelt Plaintiffs while they were handcuffed and being transported in Defendant TDCJ's van"; and

- "refusing to allow Plaintiffs to receive necessary medical services following the collision at issue."

Pursuant to Section 501.091(e) of the Texas Government Code, appellees sought a "finding by the Court of a violation by Defendant TDCJ of the Constitution of the State of Texas." Section 501.019 authorizes the State to "deduct from any monetary obligation owed to an incarcerated person . . . the cost of incarceration." TEX. GOV'T CODE § 501.019(a)(1). However, if the monetary obligation arises "from a judgment against the state, an agency of the state, or an officer or employee of the state or an agency of the state," the State may deduct the costs of incarceration "only if" two conditions are met:

> (1) the judgment awards damages for property damage or bodily injury resulting from a negligent act or omission, including an act or omission described by Section 101.021(1), Civil Practice and Remedies Code [i.e., the TTCA]; and

> (2) there is not a finding by the court of a violation of the constitution of this state or the United States.

*Id.* § 501.019(e). Appellees expressly stated they were not seeking monetary damages for TDCJ's alleged constitutional violations.

TDCJ filed an amended partial plea to the jurisdiction seeking to dismiss appellees Texas constitutional claims from the suit based on sovereign immunity.[1]

---

[1]     Appellees' first amended petition sought monetary damages for the alleged Texas constitutional violations. TDCJ filed its first partial plea to the jurisdiction regarding these claims, arguing that there was no private cause of action for damages for violations of the Texas Constitution. In response, appellees filed their second amended petition removing their request for monetary damages for the Texas Constitutional claims and replacing it with a request for a "finding" by the trial court that TDCJ violated the Constitution of the State of Texas. Because appellees failed to identify specific provisions of the Texas Constitution they alleged TDCJ had

3

In their response, appellees expressly stated that they "have not pleaded a cause of action for constitutional violations," but instead requested a "finding . . . of a constitutional violation under [Section] 501.019(e)(2)" "so that TDCJ is apprised of the basis for challenging its claim to deduct [appellees'] cost of incarceration." The trial court denied TDCJ's partial plea to the jurisdiction. This appeal followed.[2]

## Plea to the Jurisdiction

In its sole issue, TDCJ argues that the trial court erred in denying its partial plea to the jurisdiction because the trial court lacked subject matter jurisdiction over appellees' request for a "finding" of a constitutional violation.

### A.     Standard of Review

A plea to the jurisdiction challenges the trial court's authority to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Because governmental immunity from suit defeats a trial court's subject matter jurisdiction, it is "properly asserted in a plea to the jurisdiction." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether the trial court has subject matter jurisdiction is a question of law reviewed de novo, *Tex. Nat. Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002), and the plaintiff

---

violated, TDCJ filed special exceptions to the second amended petition. Appellees filed their third amended petition, which included the above quoted allegations that TDCJ violated Article 1, Sections 13 and 19 of the Texas Constitution. TDCJ thereafter filed its amended partial plea to the jurisdiction.

[2]    Appellees did not a brief on appeal.

4

bears the burden of affirmatively demonstrating the trial court's jurisdiction. *See Miranda*, 133 S.W.3d at 226.

A plea to the jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When, as here, the plea to the jurisdiction challenges only the pleadings, "we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. To determine whether the plaintiffs met their burden, "we liberally construe the pleadings, taking all factual assertions as true and looking to [the plaintiff's] intent." *City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015) (per curiam). "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court[']s jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend [their pleadings]." *Miranda*, 133 S.W.3d at 226–27. But if the pleadings affirmatively negate the existence of jurisdiction, the plea to the jurisdiction must be granted without giving the plaintiff an opportunity to amend. *Id.* at 227.

## B. Sovereign Immunity

Sovereign immunity exists to protect the State and its various divisions, including agencies, boards, hospitals, and universities, from lawsuits and liability

for money damages. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *see also Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323–24 (Tex. 2006) ("Sovereign immunity protects the State, its agencies, and its officials from lawsuits for damages" and "extends to various divisions of state government, including agencies, boards, hospitals, and universities."). "Such lawsuits 'hamper governmental functions by requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes.'" *Garcia*, 253 S.W.3d at 655 (quoting *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006)). Accordingly, Texas courts have long recognized that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847); *see also IT–Davy*, 74 S.W.3d at 853 ("Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit."). Because the Legislature is better suited to balance the conflicting policy issues associated with waiving immunity, we look to pertinent legislative enactments to determine the extent to which immunity has been voluntarily relinquished. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003). We interpret statutory waivers of immunity narrowly, as the Legislature's intent to waive immunity must be clear and unambiguous. *See* TEX. GOV'T CODE § 311.034. Without an express waiver of

6

sovereign immunity, courts do not have subject-matter jurisdiction over suits against the State or its agencies. *See State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006); *Miranda*, 133 S.W.3d at 224–25.

## C. Analysis

Appellees sought a "finding" from the trial court that TDCJ violated their rights under Article 1, Sections 13 and 19 of the Texas Constitution, which prohibit cruel and unusual punishment and the deprivation of life or liberty without due process. TEX. CONST. art. I, §§ 13, 19. In their response to TDCJ's jurisdictional plea below, appellees contended, however, they were not bringing causes of action against TDCJ for violations of the Texas Constitution, but were simply requesting the finding in connection with TDCJ's request pursuant to Section 501.019 of the Government Code to offset the cost of incarceration from any money judgment awarded to appellees in the event they prevail on their TTCA claims. According to appellees, "before permitting TDCJ to deduct incarceration expenses, [Section] 501.019(e)(2) allows [the trial court to conduct] an inquiry into [TDCJ's] possible constitutional violation." The constitutional violations were "pleaded so that TDCJ is apprised of the basis for challenging its claim to deduct [appellees'] cost[s] of incarceration . . . and for no other reason." Appellees asserted that even if they had not included this "notice as to the basis to challenge TDCJ's request to deduct . . . cost[s] of incarceration," the trial court would have been required to engage in a

7

constitutional analysis under Section 501.019(e)(2) before authorizing a setoff. In essence, appellees appear to argue that sovereign immunity is not implicated by their request for a "finding" because they have not brought a cause of action against TDCJ for constitutional violations. Thus, according to appellees, TDCJ's plea to the jurisdiction seeking to dismiss appellees' constitutional claims was "misguided" as there are no constitutional claims to be dismissed. We disagree.

Despite appellees' claim to the contrary, their request for a "finding" that TDCJ violated the Texas Constitution equates to a request for relief against TDCJ. As noted above, sovereign immunity protects the State and its agencies from lawsuits for monetary damages, as well as "other forms of relief," including actions brought under the Uniform Declaratory Judgments Act (UDJA) against the State and its political subdivisions. *See Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011) (per curiam); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009). Although not pleaded under the UDJA, construing appellees' petition liberally, appellees are effectively asking for the same type of declaratory relief available under the UDJA, i.e., that TDCJ violated their constitutional rights. This request, like a request for declaratory relief brought under the UDJA, implicates TDCJ's sovereign immunity and is barred absent an express waiver of immunity. *See Sefzik*, 355 S.W.3d at 621–22 (holding that state agencies are immune from suit under UDJA unless immunity is waived by statute); *Heinrich*, 284 S.W.3d at 372–

73 (dismissing claims seeking declaratory and injunctive relief against state entities brought under UDJA because state entities remain immune even though same claims may be brought as ultra vires claims against state officials); *Sides v. Tex. Dep't of Crim. Just.*, No. 01-15-00004-CV, 2015 WL 6692136, at *4 (Tex. App.—Houston [1st Dist.] Nov. 3, 2015, pet. denied) (holding TDCJ was immune from plaintiff's claims for violations of Article 1, Sections 13 and 19 of Texas Constitution brought under UDJA).

In an attempt to circumvent that immunity, appellees contended that Section 501.019 authorizes, even mandates, an analysis of the constitutionality of the State's actions in all cases where the State seeks to setoff the costs of incarceration against a monetary obligation, even where there are no underlying constitutional claims asserted against the State. Resolution of this issue turns on statutory construction, which presents a question of law that we review de novo. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "To discern that intent, we begin with the statute's words." *Id.* "Where text is clear, text is determinative of [legislative] intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). The words cannot be examined in isolation but must be informed by the context in which they are used. *TGS–NOPEC Geophysical*, 340

9

S.W.3d at 441. We rely on the plain meaning of the words, unless a different meaning is supplied by legislative definition or is apparent from the context, or unless such a construction leads to absurd results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008); *see also* TEX. GOV'T CODE § 311.011 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."). We further presume the Legislature chooses statutory language with care, including each word chosen for a purpose, while purposefully omitting words not chosen. *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008).

As noted above, Section 501.019 authorizes the State to "deduct from any monetary obligation owed to an incarcerated person . . . the cost of incarceration." TEX. GOV'T CODE § 501.019(a)(1). However, if the monetary obligation arises "from a judgment against the state, an agency of the state, or an officer of employee of the state or an agency of the state," the State may deduct the costs of incarceration "only if" two conditions are met:

> (1) the judgment awards damages for property damage or bodily injury resulting from a negligent act or omission, including an act or omission described by Section 101.021(1), Civil Practice and Remedies Code [i.e., the TTCA]; and

> (2) there is not a finding by the court of a violation of the constitution of this state or the United States.

10

TEX. GOV'T CODE § 501.019(e). We have found no cases interpreting the language of Section 501.019 generally, nor any specifically analyzing whether this section contains a "clean and unambiguous" waiver of sovereign immunity. *See* TEX. GOV'T CODE § 311.034.

The legislature has demonstrated that it knows how to waive sovereign immunity in clear and unambiguous language when waiver is its intent. *See* TEX. CIV. PRAC. & REM. CODE § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by [the TTCA]."); TEX. GOV'T CODE § 404.103(b) (permitting Texas Treasury Safekeeping Trust Company to enter into contracts and trust agreements and stating that " the state expressly waives all defenses of governmental immunity by and on behalf of the trust company . . . ."); TEX. GOV'T CODE § 554.0035 ("A public employee who alleges a violation of [the Whistleblower Act] may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter . . . ."); TEX. GOV'T CODE § 2007.004(a) ("Sovereign immunity to suit and liability is waived and abolished to the extent of liability created by [the Private Real Property Preservation Rights Act]."); TEX. NAT. RES. CODE § 52.035(c) ("The state waives its right to claim sovereign immunity in any action commenced against the state for unauthorized

disclosure of the confidential information obtained from the Department of the Interior . . . .").

In contrast to these unambiguous statements of waiver, Section 501.019 makes no reference whatsoever to a waiver of sovereign immunity. It simply allows the State to setoff the costs of incarceration in certain cases involving claims under the TTCA where a monetary obligation is owed and "only if . . . there is not a finding by the court of a [constitutional] violation[.]" TEX. GOV'T CODE § 501.019(e)(2). The interpretation of Section 501.019 offered by appellees below would require the State to litigate the constitutionality of its actions in all cases where it seeks a setoff of costs of incarceration and, in effect, would eliminate the State's and its agencies' sovereign immunity in suits requesting declaratory relief related to constitutional violations that otherwise, in many cases, would be barred if brought pursuant to the UDJA. *See Sefzik*, 355 S.W.3d at 620–22 (holding that state agencies are immune from suit under UDJA unless immunity is waived by statute); *Sides*, 2015 WL 6692136, at *4 (noting that certain narrow exceptions to sovereign immunity exist for declaratory judgment suits, but because plaintiff did not point to provision waiving immunity, holding that TDCJ was immune to claims under Texas Constitution).

Furthermore, in determining whether a statute affords a clear and unambiguous waiver of immunity absent express language to that effect, one

12

interpreting guideline is that a statute must waive immunity "beyond doubt," such as "when the provision in question would be meaningless unless immunity were waived." *See Taylor*, 106 S.W.3d at 697. Here, the language "there is not a finding by the court of a [constitutional] violation" would not be meaningless unless the State's immunity was waived. *See* TEX. GOV'T CODE § 501.019(e)(2). When viewed in the context of the remainder of this statute, this language contemplates that underlying claims for property damage or bodily injury resulting from a negligent act or omission have already been brought against the State, its agencies, or its employees under statutes like the TTCA, and under the United States or Texas Constitutions, or both, and that those claims resulted in a judgment. *See id.* § 501.019(e) ("This section applies to a monetary obligation *arising from a judgment* against the state, an agency of the state, or an officer or employee of the state or an agency of the state . . . ." (emphasis added)); *id.* § 501.019(a) ("The state may *deduct* from any monetary obligation owed to an incarcerated person . . . ."); *Deduct*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 324 (11th ed. 2020) ("to take away (an amount) from a total"); *see also TGS–NOPEC Geophysical*, 340 S.W.3d at 441 ("It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used."). Only after there is a judgment can the State offset or deduct the costs of incarceration against the monetary obligation it owes under

13

the judgment, and *only if* there is not a finding by the court of a constitutional violation, i.e., the plaintiff was not successful on constitutional claims, to the extent they were brought in the underlying case.

Additionally, the language in Section 501.019 "there is not a finding by the court of a [constitutional] violation" does not require the trial court to make a separate finding related to the constitutionality of the State's actions, even in the absence of an underlying constitutional claim, as appellees contended below. As with waivers of statutory immunity, the Legislature knows how to direct a court to make a certain finding, when that is its intent. *See, e.g.*, TEX. ESTATES CODE § 1160.155(b) ("If cash consideration is to be paid for the pooling or unitization agreement, the court *shall make a finding* as to the necessity of increased or additional bond as a finding is made in the making of leases on payment of the cash bonus for the lease." (emphasis added)); TEX. FAM. CODE § 263.202(e) ("At the status hearing, the court *shall make a finding* as to whether the court has identified the individual who has the right to consent for the child[.]" (emphasis added)); TEX. GOV'T CODE § 57.002(d)(2) ("[A] court may appoint a spoken language interpreter who is not a certified or licensed court interpreter if . . . the court *makes a finding* that there is no licensed court interpreter within 75 miles who can interpret in the language that is necessary in a proceeding." (emphasis added)). We interpret the particular language used in Section 501.019(e)(2)—"there is not a finding"—to

14

indicate that the Legislature was talking about whether such a finding *already exists*, as in a case where there were constitutional claims at issue. We do not interpret this to mean that the trial court may, or must, *make* a separate finding on constitutionality specifically for the purpose of deciding whether costs of incarceration may be deducted as a setoff. As discussed above, this interpretation is supported by the language of the statute when viewed as a whole.

Thus, we conclude that Section 501.019 itself does not contain clear and unambiguous waiver of sovereign immunity, but instead contemplates that other claims have been brought against the State for which immunity has been waived and a judgment has been entered. Accordingly, we hold that Section 501.019 of the Texas Government Code does not constitute the Legislature's waiver of sovereign immunity in suits against the State, its agencies, or its employees, and the trial court erred in denying TDCJ's partial plea to the jurisdiction.

We sustain TDCJ's sole issue.

## Conclusion

We conclude that appellees' request for a "finding" that TDCJ violated their rights under the Texas Constitution was a request for relief against TDCJ that implicates TDCJ's sovereign immunity, and because Section 501.019 of the Texas Government Code does not contain an express waiver of that immunity, the trial court lacked subject matter jurisdiction over appellees' constitutional claims. Thus,

15

the trial court erred in denying TDCJ's partial plea to the jurisdiction and we reverse and render judgment dismissing appellees' constitutional claims against TDCJ.

Amparo Guerra
Justice

Panel consists of Justices Goodman, Hightower, and Guerra.